```
                UNITED STATES DISTRICT COURT

                 DISTRICT OF NEW HAMPSHIRE
```

Russell Scrocca et. al

    v.                                          Civil No. 1:08-cv-0042-JL
                                                  Opinion No. 2009 DNH 113

Alton Police Department et. al

## O R D E R

This case involves, among other things, the constitutional due process requirements of short-term school suspensions. The plaintiffs, Russell Scrocca and his son Corey Scrocca, brought this § 1983 civil rights action after Corey's three-day suspension from Prospect Mountain High School[1] and Russell's subsequent arrest for his conduct at the school challenging the suspension. See generally 42 U.S.C. § 1983 (2000 & Supp. 2005). The defendants are Prospect Mountain High School and a former vice principal, Arthur W. Abelmann (the school defendants), the Alton Police Department, and Alton Detective Grant Nichols (the town defendants). The plaintiffs also allege common law malicious prosecution against Abelmann. Before the court are all

---

[1] See generally N.H. Rev. Stat. Ann. 193:13 (2008) (granting schools the authority to suspend students from school for periods under ten days).

the defendants' motions for summary judgment.² See generally Fed. R. Civ. P. 56.  This court has jurisdiction under 42 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction).

After oral argument, the court grants summary judgment in favor of the defendants.  The suspension procedure in question afforded Corey due process under the Fourteenth Amendment as a matter of law and Russell's arrest was supported by probable cause under the Fourth Amendment.  Finally, the sound basis in probable cause is also fatal to the malicious prosecution claim.

I.   **APPLICABLE LEGAL STANDARD**

Summary judgment is appropriate if, viewing the record in a light most favorable to the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Fiacco v. Sigma Alpha Epsilon

---

²The school defendants' motion is alternatively styled as a motion to dismiss, but the best course is to consider materials submitted outside the pleadings.  The court, therefore, will consider the school defendants' motion as one for summary judgment.  See  Fed. R. Civ. P. 12(d) (2009); Trans-Spec Truck Service, Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008) (district court has discretion to convert a motion to dismiss to a motion for summary judgment if it chooses to consider materials outside the pleadings).

2

Fraternity, 528 F.3d 94, 98 (1st Cir. 2008). In ruling on a motion for summary judgment, the court must view all facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor. Estate of Bennett v. Wainwright, 548 F.3d 155, 165 (1st Cir. 2008).

The non-moving party "may not defeat a properly focused motion for summary judgment by relying upon mere allegations or evidence that is less than significantly probative." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). Accordingly, even "where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993)(decided under prior version of the rule)(quotations omitted); see Estate of Bennett, 548 F.3d at 165; Fiacco, 528 F.3d at 98.

## II.  BACKGROUND

Viewed under the summary judgment standard, the record reveals the following facts. See Fed. R. Civ. P. 56(c). On

Wednesday, February 2, 2005,[3] a student at Prospect Mountain High School reported to Vice Principal Abelmann that the student's car had been vandalized in the school parking lot.  According to the student, Cory Scrocca and another student packed snow in the gas cap of his car and inserted it back into the vehicle.  Abelmann questioned Corey and the other student.  Both denied the vandalism.  The following morning, after two students reported to Abelmann that Corey had bragged about the incident, Abelmann met again with Corey and accused him of lying a day earlier.  This time, Corey admitted lying about his conduct the day before, and admitted that he had removed the other student's gas cap, but that it slid into the snow and had to be retrieved from the snow bank before reinserting it into the car.

Abelmann decided to suspend Corey from school for three days.  He then asked Corey to telephone his mother to pick him up from school.  When she arrived, Abelmann explained the situation to Mrs. Scrocca, who insisted that Corey had witnessed, but not participated in, "the prank."  During this meeting, Corey neither admitted nor denied intentionally placing snow in the car.

---

[3]The court notes some confusion shared by all parties about the exact calendar dates of the events underlying this case.  At the hearing, all concurred that the initial report of vandalism occurred on February 2, 2005 and the suspension took place on February 3, 2005.

4

The next day, Corey's father, Russell Scrocca, telephoned Abelmann to complain that the three day punishment was too harsh, and arranged to meet with Abelmann the following Monday.  Russell believed "that Corey had not done anything wrong and that the discipline was too harsh for [the] conduct alleged -- allowing a gas cap to fall in snow and allegedly lying to Abelmann." Abelmann claims that at their Monday meeting, Russell became agitated and acted in such an "unpleasant" and threatening manner that he asked Russell to leave.  After a brief "discussion" in the hallway, Russell Scrocca left the school building.

Russell's summary judgment affidavit states only that "Abelmann then accused me of being loud.  I told Abelmann I was not being loud."  Abelmann, however, reported to the Alton Police Department's on-campus "school resource officer" that during the course of their meeting, Russell became "louder and more irritated with me and my decision."  According to Abelmann, Russell became "more loud and more agitated and insisted that he could and would take care of physically punishing his son and that I should not have removed him from school for three days." Abelmann claims that Russell continued to "speak loudly," "yell" and "threaten" him as he escorted Russell out of the school. Russell threatened to complain to the superintendent and the local television media, and told Abelmann that he "better look

5

for another job."  A number of office workers reported[4] that while standing in the school office, Russell "was looking for a fight," and further raised his voice, asking Abelmann, "What are you going to do ... are you going to put your hands on me?"  Abelmann replied that he was not going to touch Russell and simply asked him to leave the building.

Defendant Grant Nichols, an Alton police detective, investigated Abelmann's report of the incident.  Detective Nichols took Abelmann's statement, interviewed witnesses at the school, spoke with the school superintendent, contacted the family of the alleged victim of the vandalism, and had a telephone conversation with Russell Scrocca.  Witness reports collected from three office workers at the high school shortly after the incident describe Russell's behavior as agitated, threatening, and loud.  One worker told Detective Nichols that she feared for Abelmann's safety.

At one point, Russell went to the police department to complain about the investigation to Detective Nichols' superior, Captain Anderson.  Nichols himself eventually joined the meeting, and suggested that the entire matter could be dropped if Russell apologized to Abelmann.  Russell refused and left the station.

---

[4] The reports were made during the police investigation described infra.

After Detective Nichols consulted with an assistant county attorney on the drafting of an affidavit, and presented the affidavit and warrant application to a neutral and detached magistrate[5] who found probable cause, a criminal complaint and warrant issued for Russell Scrocca's arrest for creating a disturbance at school.  See N.H. Rev. Stat. Ann. 193:11 (2008). The charge was later amended to disturbing the peace, see N.H. Rev. Stat. Ann. ch. 644 (2008), and eventually was placed on file and dismissed by the County Attorney.  The Laconia District court granted Russell's subsequent motion to annul the arrest.[6]

The plaintiffs filed this action, alleging:  (1) that the school defendants violated Corey's constitutional rights by suspending him without sufficient due process (Count 1), see U.S. Const. Amend. XIV; 42 U.S.C. § 1983; (2) that the town defendants arrested Russell without probable cause (Count 2), see U.S. Const. Amend. IV; 42 U.S.C. § 1983; and (3) common law malicious prosecution against Abelmann (Count 3).

---

[5]Although they allege a conspiracy between the Alton police and the Prospect Mountain school administration, the Scroccas do not challenge the impartiality of the Justice of the Peace that issued the arrest warrant.

[6]See Town Defendants' Answer, Ex. A.  Under state law, the arrest is thus treated as never having occurred.  See N.H. Rev. Stat. Ann. 651:5 (2008 & Supp. 2009).

7

### III. **ANALYSIS**

The defendants' motions raise various immunity defenses: discretionary function, qualified, and official immunity. Because there are no genuine issues of material fact creating legitimate constitutional questions as to the defendants' conduct, however, it is not necessary to analyze the case through the lens of the various immunities.  Nor does the court address the school defendants' statute of limitations defense.  The school, the police department, and their respective employees are entitled to judgment as a matter of law because their conduct unquestionably did not violate the plaintiffs' constitutional rights.

### A.   **Due process violation (Count 1)**

The school defendants contend that summary judgment is appropriate because Corey Scrocca was suspended after having received due process, including notice and an opportunity to be heard.  The court agrees.[7]

---

[7] Although the court exercises its discretion to decide this motion under the summary judgment standard, see generally, Trans-Spec Truck Service, Inc., 524 F.3d at 321, the school defendants also would prevail under the Rule 12(b)(6) dismissal standard because the allegations in the complaint describe events which afforded Corey due process as a matter of law.

8

In the context of school suspensions of less than ten days, the Fourteenth Amendment entitles a student to "oral or written notice of the charges against him, and, if he denies them, an explanation of the evidence . . . and an opportunity to present his side of the story."[8] Goss v. Lopez, 419 U.S. 565, 577 (1975); Donovan v. Ritchie, 68 F.3d 14, 17 (1st Cir. 1995); U.S. Const. amend. XIV.  The process need not be particularly lengthy or formal.

> "In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred.  In order for the student to explain his version of the facts at this discussion, he should first be told what he is accused of doing and what the basis of the accusation is."

Donovan, 68 F.3d at 17 (quotations, citations, and brackets omitted) ("Requiring that there be at least an informal give-and-take between student and disciplinarian, . . . would at least give the student the opportunity to characterize his conduct and put it in what he deems the proper context."); see, also, Martin v. Shawano-Gresham Sch. Dist., 295 F.3d 701, 706-07 (7th Cir. 2002).  As the Eleventh Circuit Court of Appeals put it, "[t]he

---

[8]The school does not dispute that Corey was entitled to a measure of due process rather, it asserts that Corey was afforded sufficient due process.  See, e.g., Shuman ex rel. Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 149 (3rd Cir. 2005) (Fourteenth Amendment implicated when state provides entitlement to a public education).

9

dictates of Goss are clear and extremely limited: Briefly stated, once school administrators tell a student what they heard or saw, ask why they heard or saw it, and allow a brief response, a student has received all the process that the Fourteenth Amendment demands." C.B. By and Through Breeding v. Driscoll, 82 F.3d 383, 386 (11th Cir. 1996); see S.G. v. Sayreville Bd. of Educ., 333 F.3d 417, 423-24 (3rd Cir. 2003)(upholding suspension of kindergarten student after informal discussion between student and administrator); Martin, 295 F.3d at 706-07.

Corey received due process under the circumstances. He had two discussions with Abelmann: one on the afternoon of the incident, another the next day. He had an additional meeting with Abelmann after his mother arrived at school to pick him up. In each discussion, Abelmann provided notice to Corey of the nature of the allegations against him - initially vandalism and then lying to Abelmann - and their basis in the form of firsthand accounts provided by other students. In each discussion, Corey offered his explanation of the events.[9] Under Goss, as

---

[9] Much of the Scroccas' apparent displeasure stems from a belief in the unfairness of Abelmann's apparent rejection of the contention that the other student involved was more culpable or that suspension was unwarranted because this was merely a "prank." This court, however, concerns itself only with the question of whether Corey was notified of his alleged offense and given a sufficient opportunity to present his version of the facts in question. Cf. Goss, 419 U.S. at 578 ("Judicial

interpreted by <u>Donovan</u>, neither Abelmann nor Prospect Mountain High School violated Corey's due process rights.[10]

---

interposition in the operation of the public school system of the Nation raises problems requiring care and restraint." (Quotations omitted)). It is worth also mentioning, without deciding (because it is unnecessary, <u>see</u> <u>supra</u> at 8), that the doctrine of discretionary immunity would likely shield the school defendants in this decision making context. <u>See</u>, e.g., <u>Brodeur v. Claremont Sch. Dist.</u>, ___ F. Supp.2d ___, 2009 WL 1651182 at *20 (D.N.H. June 12, 2009); <u>Tarbell Adm'r Inc. v. City of Concord</u>, 157 N.H. 678, 684-85 (N.H. 2008).

[10]The plaintiffs attach and cite Abelmann's report regarding the suspension to claim that Abelmann decided to suspend Corey before hearing his side of the story, but the report does not support this claim. It states that Corey was suspended on a Thursday. The incident was reported by a student the prior afternoon (Wednesday) and Abelmann spoke to Corey as he "returned from the parking lot that day." The following morning (Thursday), Corey was called to Abelmann's office after two students reported Corey's alleged "bragging." Abelmann's report states that at that meeting, Corey admitted lying about the incident the prior afternoon. It was at that point that Abelmann asked Corey to call his mother to remove him from the school building, initiating the suspension. Certainly, Corey had at least two opportunities to present his side of the story (Wednesday afternoon and Thursday morning) before his suspension.

Further, the plaintiffs also fault Abelmann for deciding to suspend Corey before meeting with both Corey and his mother. Where short term suspensions are involved, due process does not require parental presence or participation during the informal give-and-take between students and administrators. <u>See</u>, e.g., <u>S.G.</u>, 333 F.3d at 423-24 (upholding suspension of kindergarten student despite the fact that discussion was between student and administrator only); <u>Martin</u>, 295 F.3d at 706-07 (suspension discussions took place without parent present).

### B.   Unlawful arrest (Count 2)

The town defendants, the Alton Police Department and Detective Nichols, contend that the undisputed facts demonstrate that they had probable cause to arrest Russell Scrocca, thus negating the possibility of a constitutional violation.[11]  Even viewing the facts in a light most favorable to the plaintiffs, Russell's arrest did not violate his Fourth Amendment rights.[12]  The Fourth Amendment requires that an arrest be supported by

---

[11]The plaintiffs also allege something of a conspiracy between Abelmann and Nichols to use the arrest to coerce Russell Scrocca to "drop raising the issue of his son's . . . suspension . . . ."  Compl. ¶24.  A party cannot rely on "unsupported speculation" or "improbable inferences" at summary judgment. Estate of Bennett, 548 F.3d at 165.  The basis of the conspiracy allegation is Detective Nichols' suggestion that the entire matter might be dropped if Scrocca would apologize to Abelmann. This far-fetched theorizing is insufficient.  Cf. Nat'l Amusements, Inc., v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995); Goldman, 985 F.2d at 1116.

[12]Having concluded that there was no constitutional violation, the court need not engage in a separate qualified immunity analysis.  The test established by the Supreme Court asks:  (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the defendant's alleged violation such that a reasonable officer would have understood that his or her conduct violated that right.  Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009); see also, Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009) (specifically abandoning substantively identical three-part test in favor of Pearson's two part test).  Again, while a full-blown application of the doctrine is unnecessary, and is therefore not undertaken here, the defense seems to have a sound basis in the facts of this case.

probable cause. See U.S. Const. amends. IV, XIV; Wilson v. City of Boston, 421 F.3d 45, 55 (1st Cir. 2005). "Probable cause for an arrest exists when the arresting officer, acting upon apparently trustworthy information, reasonably concludes that a crime has been (or is about to be) committed and that the putative arrestee likely is one of the perpetrators." Wilson, 421 F.3d at 54 (quotations and brackets omitted).

Russell was arrested for creating a disturbance in school in violation of N.H. Rev. Stat. Ann. § 193:11, which provides: "**Disturbance**. Any person not a pupil who shall willfully interrupt or disturb any school shall be guilty of a misdemeanor." Thus, the issue, stated in terms of the probable cause standard as applied to the criminal statute, is whether the police could have reasonably concluded, based upon trustworthy information, that Russell Scrocca "interrupted or disturbed" the school.[13]

---

[13]The plaintiff recognizes in his objection that the arrest warrant alleges that the administrative staff of the school were disturbed by Russell Scrocca's alleged behavior. Pls.' Obj. to Town Defs.' Mot. for Summ. J. at 5. He contends, however, that there were no facts to support the conclusion that the statute was violated because "Not the school or any pupils at the school were disturbed." Id. This argument is without merit. "Wherever possible, statutes should be construed in a commonsense manner, honoring plain meaning, and avoiding absurd or counter-intuitive results." U.S. v. Carroll, 105 F.3d 740, 744 (1st Cir. 1997) (citations omitted). Although the statute is not drafted with great precision, it would be absurd to read the statute as requiring an entire building to be disturbed, or allowing for

Probable cause supported Russell's arrest. Detective Nichols interviewed Abelmann, who characterized Russell Scrocca's behavior as loud, disturbing and startling. He also obtained eyewitness accounts from three members of the Prospect Mountain staff who described Russell Scrocca's behavior at the school as aggressive, startling, loud, distracting, or threatening, thus corroborating Abelmann's account and contradicting Russell's.[14] Indeed, Russell's behavior reportedly left one employee fearful for Abelmann's safety. It was reasonable, therefore, for the police to conclude that Russell created a disturbance at Prospect Mountain High School,[15] thus establishing probable cause for his

---

administrative staff, teachers, or other employees to be disturbed so long as the building's physical plant or students remain sheltered from the disturbance. Cf. Marques v. Fitzgerald, 99 F.3d 1, 5 (1st Cir. 1996)("[A] statute may not be construed in a manner that results in absurdities or defeats its underlying purpose.")

[14]Neither the complaint nor Russell's affidavit contain factual assertions disputing the statements that the three school office workers made to Detective Nichols. In fact, Russell never directly denies being loud. Rather, he alleges only that "Abelmann claimed that Russell became loud and angry with him during the meeting and threatened him generally . . [and] Abelmann claimed that Russell continue [sic] to be loud and yell at him while leaving the High School." Compl. at ¶ 12; see also Pl's Obj. to Town Defs.' Mot. for Summ. J., Ex. A at 2 ("Abelmann then accused me of being loud. I told Abelmann I was not being loud.").

[15]Even assuming that Russell's allegations undermine the trustworthiness of Abelmann's complaint, the corroborating statements of the other three witnesses at the school (undisputed by Russell) validates the conclusion that probable cause

14

arrest.[16,17] As no genuine issue of material fact undermines the conclusion that the town defendants' conduct was constitutionally permissible, they are entitled to summary judgment.

C.  **Malicious prosecution (Count 3)**

Finally, defendant Abelmann contends that the state law malicious prosecution claim against him should be dismissed. The court agrees. As explained supra Part III.B, because probable cause supported Russell's arrest, he cannot possibly sustain his burden of proof.

---

supported the arrest. Cf. Mutter v. Town of Salem, 945 F.Supp. 402, 406 (D.N.H. 1996) (probable cause existed even though it was based on a victim's statement where police officer's investigation revealed other facts and circumstances making it objectively reasonable to rely on victim's statement); see also White v. Town of Marblehead, 989 F. Supp. 345, 349-351 (D.Mass. 1997)(same).

[16]Russell attempts to manufacture a fact controversy by contending that "Nichols knew from the beginning that no crime had been committed" and conspired with Abelmann, such that Nichols threatened arrest "to protect his friend the assistant principal Abelmann." This argument, however, is based on rank speculation. Summary judgment cannot be avoided by a non-movant's conclusory allegations, improbable inferences, and unsupported speculation. See Estate of Bennett, 548 F.3d at 165; see also supra Part III.B n.10.

[17]It is also worth noting, though not itself dispositive, that both the county prosecutor and the warrant-issuing magistrate evidently believed that probable cause supported the school disturbance charge. See Gidley v. Oliveri, ___ F. Supp. 2d ____, 2009 WL 1810762, *7 (D.N.H. June 25, 2009).

15

"A successful malicious prosecution claim requires, among other things, a lack of probable cause for the charge." Gidley, ___ F. Supp.2d ____, 2009 WL 1810762, *10; see Martin v. Applied Cellular Tech., Inc., 284 F.3d 1, 7 (1st Cir. 2002); Paul v. Sherburne, 153 N.H. 747, 749 (N.H. 2006); ERG, Inc. v. Barnes, 137 N.H. 186, 190 (N.H. 1993).

Russell is unable to satisfy the second element, namely, that Abelmann acted without probable cause.[18]  A party has probable cause to initiate civil or criminal proceedings if it has knowledge of facts that would lead a person "of ordinary caution and prudence to believe or entertain an honest and strong suspicion" that the accused has committed a civil wrong or crime. MacRae v. Brant, 108 N.H. 177, 180 (N.H. 1967).  "If the defendant had such information as would reasonably lead him to believe that the accused had committed a crime, it is immaterial that the defendant may have been actuated by malice or motives that were less than noble in bringing the charge." Stock v. Byers, 120 N.H. 844, 848 (N.H. 1980); see Martin, 284 F.3d at 8. Thus, even if there is a fact dispute as to the motivation of the

---

[18]While the determination of facts relevant to the existence of probable cause is left to a fact finder, the existence of probable cause is ultimately a question of law to be decided by the court. Martin, 284 F.3d at 7; see Paul, 153 N.H. at 750.

complaining party, "the absence of probable cause cannot be inferred from even express malice." Martin, 284 F.3d at 8 (quotations and brackets omitted).  Likewise, probable cause does not depend on the ultimate disposition of the complaint against the plaintiff.  Id.

Abelmann could have reasonably believed that Russell had created a disturbance at Prospect Mountain High School.  First, as noted above, the police report details three eyewitness accounts from office workers (and that of Abelmann) describing Russell's behavior as loud, startling, and threatening, all of which corroborate Abelmann's internal report.[19]  Finally, Russell Scrocca's affidavit addresses only Abelmann's accusation that he was being loud, and his denial.  It contains no disputative facts, or even conclusory allegations regarding his own disruptiveness or Abelmann's reasonable assessment to that effect.  See supra Part II.  As such, as a matter of law, Abelmann can not be said to have acted without probable cause.[20]

---

[19]Again, Abelman's report was provided to the court, and is relied on to establish facts, by the plaintiffs.

[20]The plaintiffs attempt to demonstrate lack of probable cause by asserting malice on the part of Abelmann.  As noted above, even if it is assumed that there was malice, this inference cannot be drawn.  See Martin, 284 F.3d at 8.

17

The court therefore grants summary judgment on this count in favor of Abelmann.

## IV. CONCLUSION

For the reasons set forth above, the court grants both the school defendants'[21] and the town defendants'[22] motions for summary judgment.  All other motions are denied as moot.  The clerk is directed to enter judgment for the defendants and to close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  July 28, 2009

cc:  Richard C. Mooney, Esq.
     R. Matthew Cairns, Esq.
     Dean B. Eggert, Esq.

---

[21]Document no. 30.

[22]Document no. 34.